IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DINA ARANEO and KINDRA KNUTSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SECURITY NATIONAL MORTGAGE COMPANY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR EXTENSION OF TIME<br><br><br>Case No. 2:25-cv-00119-JNP-CMR<br><br>District Judge Jill N. Parrish |

Dina Araneo and Kindra Knutson (collectively, the plaintiffs) sued their former employer, Security National Mortgage Company, for alleged violations of the Fair Labor Standards Act (FLSA). Araneo also asserted a claim under the Arizona Wage Act (AWA). Before the court are two motions brought in this lawsuit. First, Security National moves to dismiss the plaintiffs' action. ECF No. 24. Second, Security National filed a tardy motion for an extension of time to respond to the plaintiffs' motion for conditional certification of their FLSA claim as a collective action. ECF No. 27. The court DENIES the motion to dismiss and GRANTS the motion for an extension of time.

## BACKGROUND

Security National is a mortgage lender with employees in several states. Areneo worked for Security National as an hourly employee in Arizona. Knutson worked for the company as an hourly employee in Utah. Araneo and Knutson allege that Security National had a policy forbidding employees to work more than 40 hours a week without preapproval, which was

generally not given. They further claim that Security National assigned work to its hourly employees "that could not reasonably be completed in a 40-hour work week, such that these employees regularly worked more than 40 hours in a work week off-the-clock, without compensation for all of their overtime hours worked and appropriate overtime rate of pay." ECF No. 7, ¶ 10.

Araneo and Knutson sued Security National, asserting a claim under the FLSA for its alleged failure to pay for overtime hours worked. They seek to certify this claim as a collective action for all other employees similarly situated. Araneo also asserted a claim under the AWA, alleging that Security National failed to pay overtime wages by the deadline established under this statute. Araneo seeks to certify a class action for her AWA claim on behalf of other Arizona employees of Security National.

On March 3, 2025, the plaintiffs filed their amended complaint. On March 6, 2025, they filed a motion for conditional certification of their FLSA collective action. Security National's response to this motion was due on March 20, 2025, but it did not file a response or a motion for extension of time by this date. On April 10, 2025, Security National filed a motion to dismiss the plaintiffs' action. Then on May 7, 2025, about seven weeks after Security National missed its deadline to respond to the conditional certification order, it moved for an extension of time to respond to this motion, requesting that the court extend the response deadline to 35 days after the court rules on its motion to dismiss.

## ANALYSIS

**I.  MOTION TO DISMISS**

Security National moves to dismiss portions of the plaintiffs' action, asserting three arguments. First, Security National asserts that the plaintiffs failed a to state a claim for relief under

the FLSA. Second, it contends that the plaintiffs did not state a claim for a willful violation of the FLSA. Third, Security National argues that Araneo's AWA claim is preempted by the FLSA.

    A.    *Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

    B.    *The FLSA Claim*

The plaintiffs allege that due to Security National's policies, its hourly employees "regularly worked more than 40 hours in a work week off-the-clock, without compensation for all of their overtime hours worked." ECF No. 7, ¶ 10. The plaintiffs also specifically allege that they performed off-the-clock work and that they did not receive overtime pay for work weeks in which they worked over 40 hours because of these off-the-clock hours. *Id.* ¶¶ 71–72.

In order to state a claim for a violation of the overtime provision of the FLSA, "a plaintiff merely must show that he is an employee who (a) worked more than forty hours per week, and (b) is either 'engaged in commerce or in the production of goods for commerce' or 'employed in an enterprise engaged in commerce or in the production of goods for commerce.'" *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1109 (10th Cir. 2019) (quoting 29 U.S.C. § 207(a)(1)). Security National

argues that the plaintiffs have failed to satisfy this pleading standard for their FLSA claim because they did not allege enough supporting details to properly plead a plausible cause of action under *Twombly* and *Iqbal*. Specifically, Security National complains that the plaintiffs "have not pled any of the weeks that they allegedly worked off-the-clock hours, any estimates of the time they worked off-the-clock, the average rates they were paid, the amount of overtime wages they are owed, or any other facts that will permit the court to find plausibility." ECF No. 24 at 7. Security National acknowledges that the Tenth Circuit has never explicitly required this degree of detail to support an FLSA claim. *See Guereca v. Cordero*, 487 F. Supp. 3d 1138, 1154 (D.N.M. 2020) ("Subsequent to the Supreme Court's decisions in *Iqbal* and *Twombly*, the Tenth Circuit has not addressed the degree of specificity required to state a claim for failure to pay overtime wages under the FLSA."). Instead, it relies on two out-of-circuit authorities: *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014) and *Hall v. DIRECTV, LLC*, 846 F.3d 757 (4th Cir. 2017).[1]

In *Landers*, the Ninth Circuit held that a plaintiff's allegation that he had worked more than 40 hours per week without receiving overtime pay was insufficient to state an FLSA claim. 771 F.3d at 646. The *Landers* court labeled these allegations as conclusory and reasoned that they ran "afoul of the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be

---

[1] Security National also cites *Lundy v. Catholic Health Systems of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013) in support of its argument. But this case is inapposite. The *Lundy* court affirmed dismissal of an FLSA claim not because the plaintiffs had failed to plead sufficient supporting details, but because the plaintiffs did not allege facts establishing that they had ever worked more than 40 hours in a given workweek without receiving overtime pay. *Id*. at 114–15, *see also Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014) (affirming dismissal where "[n]one of the named plaintiffs [had] alleged a single workweek in which he or she worked at least forty hours and also worked uncompensated time in excess of forty hours"). The plaintiffs in this case have clearly alleged that they and other hourly employees have "regularly" worked more than 40 hours in a given work week without receiving overtime pay. The issue here is whether the plaintiffs must plead additional supporting details to state a plausible claim under *Twombly* and *Iqbal*.

discharged by '[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action.'" *Id.* at 644 (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Thus, Landers ruled that a plaintiff alleging an FLSA claim "may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* at 645.

In *Hall*, the Fourth Circuit similarly held that "plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." 846 F.3d at 777. Instead, plaintiffs must "provide some factual context that will 'nudge' their claim 'from conceivable to plausible.'" *Id.* (citation omitted). The plaintiffs in *Hall* met this pleading standard by providing an estimate of the number of hours worked in any given workweek, including a breakdown of the number of compensated and uncompensated hours typically worked. *Id.* at 778.

Other circuits, however, have not required this level of detail to plead a plausible FLSA claim. The Third Circuit, for example, has held that "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of *those* forty-hour weeks, would suffice" to state a claim. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014). And in an unpublished opinion, the Eleventh Circuit has held that allegations that an employer "repeatedly" failed to compensate employees who worked over 40 hours in a workweek at the appropriate rate was all that was required to state a plausible claim for relief. *Sec'y of Lab. v. Labbe*, 319 F. App'x 761, 763–64 (11th Cir. 2008) (unpublished).

Similarly, district courts in this circuit have routinely rejected the notion that additional detail is required. A court in the District of New Mexico, for example, ruled that "a complaint need not specify either the dates on which the plaintiff worked over forty hours per week, or the number of hours worked over forty." *Guereca*, 487 F. Supp. 3d at 1155. It reasoned that an allegation that the plaintiffs "typically worked in excess of 40 hours per week, and they often worked fifty hours per week" without receiving overtime pay was sufficient to state a plausible FLSA claim. *Id.* at 1155–56. Other district courts in this circuit are in accord. *Florece v. Jose Pepper's Restaurants, LLC*, No. 2:20-cv-02339-TC-ADM, 2021 WL 722822, at *4 (D. Kan. Feb. 24, 2021) (ruling that an allegation that the plaintiff "routinely worked in excess of forty hours per workweek without receiving proper minimum wage and overtime compensation" was sufficient to state a claim); *Thomas v. Pauls Valley Boomarang Diner, LLC*, 320 F. Supp. 3d 1253, 1260–61 (W.D. Okla. 2018) (same); *Rayfield v. Sandbox Logistics, LLC*, 217 F. Supp. 3d 1299, 1300 (D. Colo. 2016) (ruling that an FLSA plaintiff's allegation that he worked over 40 hours a week and was not paid overtime was sufficient and that he was "not required to itemize or provide detailed dates and times of his work at the pleading stage of his case"); *Renteria-Camacho v. DIRECTV, Inc.*, No. 14-2529, 2015 WL 1399707, at *3 (D. Kan. Mar. 26, 2015) ("[T]he court elects to follow . . . the long line of cases declining to require factually detailed pleading in FLSA cases."); *Solis v. El Tequila, LLC*, No. 12-cv-588-JED-PJC, 2013 WL 3771413, at *2 (N.D. Okla. July 17, 2013) (ruling that an FLSA overtime claim is "straightforward and capable of being described without reference to a large body of facts"); *In re Bank of Am. Wage & Hour Emp. Litig.*, No. 10-MD-2138-JWL, 2010 WL 4180567, at *5 (D. Kan. Oct. 20, 2010) ("[N]umerous courts continue to find that dismissal of FLSA claims is not appropriate when the complaint alleges only that non-exempt employees

regularly worked more than 40 hours per workweek and that they were not paid time-and-a-half for those overtime hours.").

Considering these conflicting lines of authority, this court joins the other district courts in this circuit that have rejected the heightened pleading standard adopted by the Fourth and Ninth Circuits in *Hall* and *Landers*. *See Davis v. Steward Energy II, LLC*, No. CV 20-966 KG/JHR, 2021 WL 1946406, at *3 (D.N.M. May 14, 2021) ("Considering this persuasive and extensive caselaw by Tenth Circuit district courts, including this Court, the Court will follow that caselaw rather than *Hall* in discerning the standard for pleading an FLSA overtime claim."); *Lopez v. Next Generation Constr. & Env't, LLC*, No. 16-CV-00076-CMA-KLM, 2018 WL 4111027, at *4 (D. Colo. Aug. 29, 2018) (concluding that, contrary to the holding of *Landers*, "all that is required for a plaintiff asserting a claim of unpaid overtime under the FLSA is a statement that he worked more than forty hours in a given work week (or weeks) without being compensated for overtime"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The facts required to prove an FLSA overtime claim are (1) that the employee worked more than 40 hours in a single workweek and (2) that the employer failed to pay overtime for the time worked in excess of 40 hours. Thus, assertions regarding hours worked and pay not received are not merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that are insufficient to state a claim under *Twombly* and *Iqbal*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678. These assertions are the core facts that permit a court to draw the reasonable inference that a defendant is liable for a violation of the FLSA. No additional detail is required under Rule 8(a)(2) to plead a short and plain statement for relief. Because the plaintiffs have adequate pled these facts by alleging that they "regularly" worked over

40 hours a week without receiving overtime pay, the court rejects Security National's argument that the FLSA claim should be dismissed for failure to state a claim.

### C. Willfulness

The plaintiffs alleged in their complaint that "Security National's violations of the FLSA were knowing and willful." ECF No. 7 at ¶ 73. Security National argues that this allegation is not supported by sufficient factual detail to satisfy the plausibility standard under *Twombly* and *Iqbal* and that the court should therefore dismiss the plaintiffs' "claim for a willful violation of the FLSA." ECF No. 24 at 9.

Security National's argument fundamentally misunderstands the FLSA. A plaintiff need not allege that a violation of the FLSA was willful in order to state a claim for relief under this statute. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298 (10th Cir. 2018). The willfulness of an FLSA violation is only relevant to a potential statute of limitations defense because a non-willful violation has a limitations period of two years while a willful violation has a limitations period of three years. *Id.* (citing 29 U.S.C. § 255(a)). Because a plaintiff has no obligation to anticipate affirmative defenses, such as a statute of limitations defense, in the complaint, the adequacy of the plaintiff's assertion of a willful violation is not a proper ground for dismissal. *Id.* at 1298–99; *Shields v. United States Postal Serv.*, 729 F. App'x 662, 663 (10th Cir. 2018) (unpublished). Accordingly, the court denies Security National's request to dismiss what it labels as the willful violation claim.

### D. The AWA Claim

Finally, Security National argues that the court should dismiss the AWA claim because this state wage and hour act is preempted by the FLSA. The court disagrees.

8

Congress has the constitutional authority to preempt—i.e., invalidate—state laws. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015). It may do so by way of express language in a statute, or it may implicitly preempt state law. *Id.* at 376–77. There are two types of implicit preemption: field preemption and conflict preemption. *Id.* at 377. Regardless of which type of preemption is asserted, "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citation omitted). Moreover, "in all pre-emption cases, and particularly in those in which Congress has 'legislated in a field which the States have traditionally occupied,' we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Id.* (citation modified).

Only implicit conflict preemption is at issue in this case. Conflict preemption occurs when either (1) "compliance with both federal and state regulations is a physical impossibility," or (2) the challenged state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citations omitted). Security National argues that the AWA is an obstacle to the accomplishment of the purpose of the FLSA for two primary reasons.

First, Security National argues that conflict preemption invalidates Areneo's AWA claim because the FLSA claim is "based on the same factual allegations and circumstances" as the AWA claim. ECF No. 24 at 10. In other words, Security National contends that the AWA is preempted because it overlaps with the FLSA. But overlapping laws do not create a conflict between the federal and state laws. *Kansas v. Garcia*, 589 U.S. 191, 211 (2020) ("The mere fact that state laws like the Kansas provisions at issue overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption."). Indeed, Security National fails to explain

9

how the extent to which the AWA overlaps with the FLSA implicates conflict preemption. Accordingly, this court agrees with other courts that have concluded that the fact that the FLSA and a state wage and hour statute both regulate overtime pay does not make compliance with both statutes impossible, nor does the state law stand as an obstacle to the accomplishment of the purposes and objectives of the FLSA. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 262 (3d Cir. 2012) (rejecting an argument that conflict preemption invalidated the Maryland Wage and Hour Law and the Ohio Minimum Fair Wage Standards Act and finding this contention to be "counterintuitive, since it suggests that state enforcement of standards that are identical with those established in the FLSA would somehow conflict with congressional purpose"); *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 760 (9th Cir. 2010), *vacated on other grounds*, 565 U.S. 801 (2011) ("Where, as here, the state and federal requirements are the same, it is obviously possible to comply with both laws simultaneously."); *Butler v. Specialized Loan Servicing LLC*, No. 24-cv-01087-PAB-SBP, 2025 WL 404302, at *4 (D. Colo. Feb. 4, 2025) ("[T]he AWA does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the FLSA.").

Second, Security National argues that the AWA is preempted because it is "wholly derivative of her claims for violations of the FLSA." ECF No. 24 at 11. "[W]hile the FLSA confers a 'substantive right to overtime pay,' 'the AWA goes beyond the FLSA by requiring Defendant to pay those overtime wages in a timely manner and authorizing treble damages.'" *Butler*, 2025 WL 404302, at *3. Because the right to timely overtime pay under the AWA relies on the substantive right to receive overtime pay under the FLSA, Security National contends that the AWA is preempted. But it provides no reasoning as to how the AWA's timeliness requirement stands as an obstacle to accomplishing the purposes of the FLSA. "The principal congressional purpose in

10

enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours . . . ." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Requiring the timely payment of overtime wages does not interfere with this congressional purpose. *Salgado v. Flowers Foods Inc.*, No. CV-22-00420-TUC-JGZ, 2023 WL 5348573, at *3 (D. Ariz. Aug. 21, 2023) ("The AWA's requirement that an employer *timely* pay its employees overtime wages that it owes furthers Congress' purpose of protecting covered employees from substandard wages and oppressive working hours.").

Indeed, the FLSA explicitly provides that state wage and hour laws can complement the protections enacted by Congress. The FLSA states: "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter . . . ." 29 U.S.C. § 218(a). The parties do not assert that this provision applies directly to the AWA. But it clearly demonstrates Congress's intent that the FLSA coexist with state wage and hour laws. *See Knepper*, 675 F.3d at 262 (holding that § 218(a) "evinces a clear intent to preserve rather than supplant state law"); *Florece v. Jose Pepper's Restaurants, LLC*, No. 2:20-cv-02339-TC-ADM, 2021 WL 722822, at *5 (D. Kan. Feb. 24, 2021) ("[I]t is noteworthy that Congress expressly recognized the FLSA would operate alongside complementary state employment laws."). Additionally, the states' longstanding exercise of its police powers to regulate wages strengthens the presumption that Congress did not intend to implicitly supplant state wage and hour laws through the FLSA. *Knepper*, 675 F.3d at 262–63.

Security national relies on three Arizona district court cases that ruled that the AWA was preempted by the FLSA, *Salazar v. Driver Provider Phoenix LLC*, No. CV-19-05760-PHX-SMB,

11

2023 WL 2308372, at *3 (D. Ariz. Mar. 1, 2023); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 923–24 (D. Ariz. 2010); *Wood v. TriVita, Inc.*, No. CV-08-0765-PHX-SRB, 2008 WL 6566637, at *3–4 (D. Ariz. Sept. 18, 2008), and a Utah district court case that ruled that state common-law claims were preempted by the FLSA, *Maxfield v. Utah Dep't of Alcoholic Beverage Control*, 665 F. Supp. 3d 1300, 1310–11 (D. Utah 2023). But none of these cases conducts a preemption analysis under the standards established by the Supreme Court. Instead, they rely on three circuit court opinions: *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007); *Williamson v. General Dynamics Corp.*, 208 F.3d 1144, 1154 (9th Cir. 2000); and *Roman v. Maietta Const., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998).

None of these circuit court opinions is persuasive. In *Williamson*, the Ninth Circuit stated, without analysis: "Claims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." 208 F.3d at 1154. But the Ninth Circuit later acknowledged in *Wang* that this statement was dicta and rejected it after conducting a preemption analysis. 623 F.3d at 760. Although *Wang* was later vacated by the Supreme Court on other grounds, the court finds the *Wang* court's analysis to be persuasive. In *Roman*, the First Circuit also held that "the FLSA is the exclusive remedy for enforcement of rights created under the FLSA." 147 F.3d at 76 (citation omitted). The *Roman* court, however, did not conduct a preemption analysis. It based its holding on a ruling made by a court in the Northern District of Alabama, which similarly failed to apply a preemption analysis. *Id.* (citing *Tombrello v. USX Corp.*, 763 F. Supp. 541, 545 (N.D. Ala. 1991). Although the Fourth Circuit conducted a preemption analysis in *Anderson*, it did so in the context of state common-law claims rather than a state wage and hour statute. 508 F.3d at 194. Moreover, *Anderson* is not persuasive. The *Anderson* court founded its holding that the FLSA provides the exclusive remedy for the violation of its provisions on an

earlier Fourth Circuit opinion, *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437 (4th Cir. 1999). But *Kendall* had nothing to do with preemption. Instead, *Kendall* held that the provisions of the FLSA could not be enforced through another *federal* statute: 42 U.S.C. § 1983. *Id.* at 443.

Because none of these circuit court opinions persuades the court that the FLSA has preempted all state wage and hour laws, this court joins the other circuits that have rejected this notion. *See Mitchell v. JCG Indus., Inc.*, 745 F.3d 837, 838 (7th Cir. 2014) ("The federal law [FLSA] does not preempt the state law [Illinois Minimum Wage Law] if the latter is more generous to employees . . . ."); *Knepper*, 675 F.3d at 264; *Wang*, 623 F.3d at 760; *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2d Cir. 1991) ("[E]very Circuit that has considered the issue has reached the same conclusion—state overtime wage law is not preempted by . . . the FLSA."); *see also Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1348 (11th Cir. 1994) ("[T]he district court erred in holding that the FLSA pre-empts a state law contractual claim that seeks to recover wages for time that is compensable under the contract though not under the FLSA."). Additionally, recent district court rulings have rejected *Salazar*, *Colson*, and *Wood* for the same reasons noted above and ruled that the FLSA does not preempt the AWA. *Levy v. Sonoran Rovers LLC*, No. CV-25-00039-TUC-RCC, 2025 WL 1736774, at *2–*3 (D. Ariz. June 23, 2025); *Butler*, 2025 WL 404302, at *4; *Salgado*, 2023 WL 5348573, at *3–*4. Therefore, the court finds that the AWA has not been preempted and denies Security National's request to dismiss Areneo's claim based on this statute.

## II. MOTION FOR LEAVE TO FILE AN UNTIMELY RESPONSE

On March 6, 2025, the plaintiffs filed a motion for conditional certification of their FLSA collective action. About seven weeks after the deadline to file a response had passed, Security National filed a motion for extension of time to respond. It requested that the deadline be extended

until 35 days after the court rules on its motion to dismiss. Counsel for Security National represented that the plaintiffs served the amended complaint and the motion for conditional certification on the same day that these documents were filed with the court. Defense counsel further stated that he did not notice the motion, which had arrived in the stack of papers served on Security National, and that he was not aware of the motion until the plaintiffs referenced it in their response to the motion to dismiss.

Under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, a court may grant a motion for extension of time filed after the deadline has passed if it finds that the movant's tardiness was caused by excusable neglect. In determining whether the movant's neglect is excusable, courts consider the four *Pioneer* factors: "the danger of prejudice to [the nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) (alteration in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). A court's excusable neglect determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395.

The danger-of-prejudice factor is particularly important here. In most cases, the prejudice alleged by the nonmoving party is caused by delay in adjudicating the claims in the action. But here, delays caused by untimely filings can result in a reduction to or the complete loss of any potential financial recovery for workers who elect to opt into a collective action. For the purpose of calculating the statute of limitations for an opt-in plaintiff's FLSA claim, the action is deemed to commence when a written consent to join the action is filed with the court. 29 U.S.C. § 256(b).

Thus, delays in providing notice of an FLSA action to workers through the preliminary certification process can result in claims being lost or reduced due to statute of limitations defenses.

At oral argument, however, counsel for Security National made two concessions to assuage the court's concerns regarding prejudice. First, the parties stated that they had entered into a tolling agreement to facilitate a failed mediation. Although the parties represented that there was some ambiguity as to whether the tolling agreement remained in place, counsel for Security National represented that the tolling agreement remained in effect. The court relies on this concession for the purpose of ruling on this motion for leave to file an untimely response brief.

Second, Security National conceded that the court could equitably toll the statute of limitations if it had concerns. Equitable tolling may be applied to an FLSA claim "on a case-by-case basis to prevent inequity." *Felps v. Mewbourne Oil Co., Inc.*, 460 F. Supp. 3d 1232, 1238 (D.N.M. 2020) (citation omitted). This doctrine may extend a limitations period if the plaintiff "has in some extraordinary way been prevented from asserting his or her rights." *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984) (citation omitted). "[T]he decision to invoke equitable tolling in a particular case lies exclusively within the sound discretion of the trial court." *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012). In light of Security National's concession that the court has the ability to toll the statute of limitations in this case, the court determines that equitable tolling is appropriate because the delay in briefing the plaintiffs' conditional certification motion has prevented any potential opt-in plaintiffs from receiving notice of this action and having an opportunity to assert his or her rights under the FLSA. Thus, in addition to the tolling agreement between the parties, the court also equitably tolls the statute of limitations for any potential opt-in plaintiffs from March 20, 2025 (the due date for Security National's

response to the conditional certification motion) until 30 days after the court rules on the plaintiffs' conditional certification motion.

Because the statute of limitations has been tolled, the court finds that danger-of-prejudice factor weighs in favor of granting an extension of time for Security National to file its response brief. The second *Pioneer* factor, on the other hand, weighs slightly against granting the extension of time because the length of the delay before Security National filed its motion for an extension of time—48 days—was substantial. The reason-for-the-delay factor also weighs slightly against an extension. Counsel's inadvertence in failing to notice that the motion had been filed is excusable. *See Pioneer*, 507 U.S. at 388 ("Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."). But after defense counsel discovered the existence of the motion for conditional certification when the plaintiffs referenced it in their response to the motion to dismiss, Security National waited an additional 14 days before filing its motion for an extension of time. Given the cursory nature of Security National's motion for an extension, it could have filed the motion within a few days. The final factor weighs in favor of Security National because there is no evidence that it acted in bad faith.

Weighing the *Pioneer* factors, the court determines that Security National has satisfied the excusable neglect standard. The lack of prejudice to any potential opt-in plaintiffs due to the tolling of the statute of limitations is the most important factor in this case and weighs decisively in favor of granting Security National's motion for an extension of time. The court, however, declines to grant the full amount of the requested 35-day extension of time. Security National shall have until December 11, 2025 to file its response to the motion for conditional certification.

## CONCLUSION

For the above-stated reasons, the court denies Security National's motion to dismiss. The court grants its motion for an extension of time to respond to the plaintiffs' motion for conditional certification. The response brief shall be due by December 11, 2025.

DATED November 24, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge