IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DINA ARANEO and KINDRA KNUTSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SECURITY NATIONAL MORTGAGE COMPANY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR CONDITIONAL CERTIFICATION<br><br>Case No. 2:25-cv-00119-JNP-CMR<br><br>District Judge Jill N. Parrish |

Dina Araneo and Kindra Knutson (collectively, the plaintiffs) sued their former employer, Security National Mortgage Company, for alleged violations of the Fair Labor Standards Act (FLSA). Before the court is the plaintiffs' motion for conditional certification of a collective action on behalf of other employees of Security National that are similarly situated. ECF No. 14. The motion is GRANTED IN PART. The court conditionally certifies a collective action for non-exempt employees located in Arizona and Utah.

**BACKGROUND**

Security National is a mortgage lender with employees in 22 states. Araneo worked for Security National as an hourly employee in its Scottsdale, Arizona office. Knutson worked for the company as an hourly employee in Murray, Utah. Araneo and Knutson sued Security National, asserting a claim under the FLSA for its alleged failure to compensate them for overtime hours. They allege in their complaint that Security National had a policy forbidding employees from working more than 40 hours a week without preapproval, which was generally not given. They

further claim that Security National assigned work to its hourly employees "that could not reasonably be completed in a 40-hour work week, such that these employees regularly worked more than 40 hours in a work week off-the-clock, without compensation for all of their overtime hours worked and appropriate overtime rate of pay." ECF No. 7, ¶ 10. The plaintiffs also claimed that Security National "failed to pay overtime at the lawfully required overtime rate of pay by failing to use the proper regular rate when calculating overtime pay." *Id.*, ¶ 31.

The plaintiffs filed a motion to conditionally certify the FLSA claim as a collective action on behalf of all other loan employees of Security National that are similarly situated. They argued that the proposed collective action should include all hourly loan employees of Security National across all of its branches in the 22 states where it operates. Both Araneo and Knutson provided declarations in support of their motion. They stated that due to Security National's policies, they each worked approximately 50–55 hours per week but received wages for only 40 hours a week. The plaintiffs further averred that coworkers within their respective offices told the plaintiffs that they had also worked more than 40 hours per week without receiving overtime pay.[1]

## LEGAL STANDARD

The FLSA authorizes a plaintiff to bring a collective action on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step approach to

---

[1] In January 2026, the plaintiffs filed consent forms signed by individuals who purportedly worked for Security National in Alabama and Texas. These consent forms state that the individuals consent to be plaintiffs in this litigation and designate the plaintiffs' attorneys to represent them. The plaintiffs suggest in their reply brief that these consent forms show that FLSA violations occurred in Alabama and Texas as well as Arizona and Utah. But the consent forms have no evidentiary value. They are not declarations and do not make any assertions of fact concerning the working conditions in the offices where the assignors worked. The court, therefore, disregards these consent forms in considering this motion for conditional certification.

determine whether proposed class members are similarly situated. *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1102–03, 1105 (10th Cir. 2001). First, the court "makes an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.'" *Id.* at 1102. "In doing so, a court 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* (alteration in original) (citation omitted). This standard is "fairly lenient." *Id.* at 1103. "At the notice stage, the scope of the Court's similarity analysis is limited to 'the substantial allegations of the complaint along with any supporting affidavits or declarations.'" *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1118 (D.N.M. 2017) (citation omitted). Moreover, courts do not "weigh evidence, resolve factual disputes, or reach the merits of the pending claims at the conditional-certification stage." *Bowling v. DaVita, Inc.*, No. 21-cv-03033-NYW-KLM, 2023 WL 4364140, at *3 (D. Colo. July 6, 2023).

If the court permits conditional certification under the first step, the parties are permitted to conduct discovery regarding the proposed collective action. *See Thiessen*, 267 F.3d at 1102–03. "At the conclusion of discovery (often prompted by a motion to decertify), the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'" *Id*.

## ANALYSIS

### I. CONDITIONAL CERTIFICATION

Security National argues that the plaintiffs have not satisfied the standard for conditional certification of a collective action because they did not allege facts supporting the existence of a single overarching policy that required employees to perform off-the-clock work. They contend that the plaintiffs have asserted facts showing only that managers in the Scottsdale and Murray offices made isolated decisions that resulted in unpaid overtime hours in those offices. The plaintiffs counter that they have alleged sufficient facts to support an inference that Security

3

National fostered an environment that amounted to a single, de facto policy encouraging managers to require overtime work without pay.

In their complaint, the plaintiffs allege that Security National had a policy forbidding hourly loan employees from reporting more than 40 hours of work per week unless they received preapproval, which was generally not granted. In support, the plaintiffs provided declarations asserting that managers in the Scottsdale and Murray offices required them to perform off-the-clock work in order to complete all of their mandatory tasks. Other employees in these offices reported to the plaintiffs that they had to perform overtime work without compensation in order to keep up with their workload. Managers told the plaintiffs that they received bonuses for closing loans in lieu of compensation for overtime hours.

The similarities between the de facto overtime policies alleged in the Scottsdale and Murray offices are sufficient to satisfy the fairly lenient standard of showing that the plaintiffs' coworkers were similarly situated under step one of the *Thiessen* test. The facts of this case are comparable to the facts of *Brayman v. KeyPoint Government Solutions, Inc.*, 595 F. Supp. 3d 983 (D. Colo. 2022), *rev'd in part, vacated in part on other grounds*, 83 F.4th 823 (10th Cir. 2023). In that case, the district court analyzed whether the plaintiffs had carried their burden of showing that certification of a collective action was appropriate under the more demanding step two of the *Thiessen* test:

> . . . Plaintiffs, although working in far-removed and disparate locations, have provided consistent and corroborating statements attesting that—notwithstanding KeyPoint's official policies prohibiting Plaintiffs from underreporting their overtime hours—KeyPoint at different work locations uniformly required them to perform job duties that could not easily be completed within 40 hours while at the same time requiring all overtime to be productive; and they further assert that KeyPoint had a consistent practice of penalizing Plaintiffs who failed to meet its performance

> expectations, thereby creating an environment that caused these Plaintiffs to feel pressured to underreport overtime.
>
> In the Court's view, the close similarities in Plaintiffs' job functions, as well as the fact that a large number of Plaintiffs from around the country have asserted that KeyPoint maintained the same or substantially similar unwritten practice of pressuring them to engage in off-the-clock overtime work, weigh in favor of a determination that Plaintiffs are similarly situated under § 216(b).

*Id.* at 993 (citations omitted);[2] *accord*, *McGlon v. Sprint Corp.*, No. 16-cv-2099-JAR, 2016 WL 7103949, at *5 (D. Kan. Dec. 6, 2016) ("Plaintiff produced four declarations by [employees] showing that Defendants instructed [employees] to record only forty hours despite having worked overtime to deny overtime compensation."); *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011) ("The Court finds that the allegations in the First Amended Complaint, supported by the affidavits of David Gaston and David Smith, collectively are sufficient under the lenient standard of the notice step to warrant the conditional certification of a class or 'collective' action."). The plaintiffs in this case have similarly produced evidence that managers in two Security National offices informally required loan employees to work overtime without pay in order to meet their employer's expectations. This evidence is sufficient to show that at least some of Security National's employees were similarly situated because they were subject to a single policy or plan.

---

[2] Although *Brayman* analyzed whether potential members of the collective action were similarly situated under step two of *Thiessen* rather than step one, the analysis of the *Brayman* case also applies to the step-one determination of whether workers were similarly situated. Indeed, because step two is a more stringent test than step one, *Brayman* applies with greater force to the step-one analysis.

**II.    SCOPE OF THE CONDITIONALLY CERTIFIED COLLECTIVE ACTION**

The parties dispute the scope of any potential conditionally certified collective action. The plaintiffs argue that the court should certify a collective action encompassing all hourly "loan employees" of Security National across all of its branches located in 22 states. Security National asserts that any conditionally certified collective action should be limited to the job positions that the plaintiffs held—loan processor, loan assistant, and loan closer—and should include employees located only in the Scottsdale and Murray offices.

    *A.    Geographic Scope of the Collective Action*

The Tenth Circuit has not squarely addressed how courts should define the geographic reach of a conditionally certified collective action. In the absence of binding precedent on this issue, district courts within this Circuit have defined the scope of a collective action under one of two analytical frameworks.

        1)    Direct Evidence

First, courts look to whether the allegations of the complaint and the assertions made in any supporting declarations directly demonstrate the existence of a single decision, policy, or plan that affects a segment of employees across an entire company. In *Hose v. Henry Indus., Inc.*, 49 F. Supp. 3d 906, 907–08 (D. Kan. 2014), for example, a plaintiff alleged that he routinely worked more than 40 hours per week without receiving overtime pay because his employer improperly designated him as an independent contractor. The employer argued that the court should conditionally certify a collective action that would include only drivers working out of the facility where the plaintiff was employed because the plaintiff had only produced evidence related to that particular facility. *Id.* at 918. The *Hose* court disagreed. Both parties to that litigation agreed that the defendant had a companywide policy of treating its delivery drivers as independent contractors.

*Id.* at 918–19. The court determined that conditional certification of a nationwide collective action was appropriate because all of the drivers were subject to this independent contractor policy, which was the root cause of the employer's nonpayment of overtime wages. *Id.* at 919.

In contrast, the plaintiffs in this case have not plausibly alleged facts or produced evidence directly supporting the existence of a similar companywide policy requiring or encouraging employees to work off the clock. Although the plaintiffs plausibly alleged that Security National has a policy of generally disallowing employees from logging over 40 hours in a given week, this policy, on its own, is not sufficient to support an FLSA claim. If an employer does not require its employees to work over 40 hours per week, a policy of capping the number of hours worked does not violate federal overtime protections. The crux of the plaintiffs' FLSA claim is that Security National also had an informal policy of giving its loan employees more work than they could complete in a 40-hour week and requiring them to perform the work without recording the extra hours on their timesheets. The plaintiffs presented evidence that this informal policy existed in the Scottsdale and Murray offices. They further alleged in their complaint that "Security National has a common, uniform, and widespread policy and practice which discourages . . . non-exempt employees from reporting overtime hours." ECF No. 7, ¶ 8. But such a conclusory allegation of the existence of a companywide informal policy, absent specific facts supporting the allegation, is not sufficient to justify a nationwide collective action. *See Bowling v. DaVita, Inc.*, No. 21-cv-03033-NYW-KLM, 2023 WL 4364140, at *7 (D. Colo. July 6, 2023) (observing that "conclusory assertions" of an informal policy are not sufficient to support conditional certification of a nationwide class). Because the allegations of the complaint and the plaintiffs' declarations do not adequately support the existence of a single, nationwide policy requiring off-the-clock overtime,

the plaintiffs have not directly shown the existence of a de facto companywide practice that would support a collective action spanning all 22 states where Security National operates.

The plaintiffs also argue that they have directly demonstrated the existence of a nationwide policy under another theory. Security National concedes that it mistakenly failed to take into account nondiscretionary bonuses when calculating the rate of pay for overtime hours that were reported by hourly loan employees. In order to rectify this mistake, Security National sent checks to former and current employees for the difference between the incorrect rate of pay for reported overtime hours and the corrected rate of pay when bonuses are included in the rate calculation. In her declaration, Araneo claimed that she received a check for $166.23 purporting to compensate her for the miscalculated rate-of-pay. Knutson averred that she received a check for $2.27. Both the Araneo and Knutson declarations make identical assertions regarding these checks: "This amount . . . is woefully insufficient to compensate me for all of the overtime hours I actually worked and at the correct overtime rate of pay accounting for non-discretionary bonuses/commissions I earned and all overtime hours I worked." The plaintiffs contend that these checks, together with Security National's admission that it sent checks to other loan employees who had reported overtime hours, establish that loan employees nationwide are similarly situated because they were subjected to the same defective rate-of-pay policy.

But Security National's failure to include nondiscretionary bonuses in its calculation of the rate of pay for reported overtime hours is actionable only if it failed to correct the error. Neither the operative complaint nor the plaintiffs' declarations state that the checks were inadequate to correct the rate-of-pay error for reported overtime hours. Instead, the plaintiffs conflate their rate-of-pay theory with their off-the-clock overtime theory by stating that the checks were inadequate to fully compensate them for all of the unreported overtime hours that they actually worked in

8

addition to the overtime hours that they reported. Thus, the plaintiffs' evidence supporting the rate-of-pay theory merely restates their assertion that they worked overtime hours without reporting them. Absent any evidence or factual allegations supporting the proposition that Security National failed to rectify the rate-of-pay error for reported overtime hours, evidence that Security National issued corrective checks to loan employees does not justify a nationwide collective action.

        2)        Indirect Evidence

In the absence of direct evidence of a nationwide policy, courts have employed a second method for defining the proper scope of a proposed collective action. District courts within the Tenth Circuit have evaluated the sample size of individual workers reporting the existence of an informal policy to determine the geographic reach of the collective action. In *Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1125–26 (D.N.M. 2017), for example, the plaintiffs proffered declarations from employees located in five states claiming that they had been subjected to a compensation policy that violated the FLSA. Based on this evidence, the court certified a nationwide collective action, reasoning that "[t]he geographical diversity and commonality of these allegations support a reasonable inference that the same violations occurred at other . . . locations nationwide." Similarly, the court in *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 434–35 (D.N.M. 2018) ruled that "declarations from employees in five states are sufficient to support conditional certification of a nationwide class at this stage because the evidence offered by Plaintiffs supports the allegation that the wage policy is not restricted geographically to only the five states in the employee declarations, but instead that this is a company-wide policy."

Other courts have found that the evidence presented did not justify a nationwide collective action but was sufficient to conditionally certify a class confined to a limited number of states. *Madsen v. Sidwell Air Freight*, No. 1:23-cv-0008-JNP, 2024 WL 1160204, at *3 (D. Utah Mar. 18,

2024) (ruling that declarations submitted by an employee in Utah and another employee located in Oregon were sufficient to conditionally certify a collective action covering those states but were insufficient to support a collective action in five other states where the employer operated); *Bowling*, 2023 WL 4364140, at *7 (declining to conditionally certify a nationwide collective action and concluding "that conditional certification must be limited to the nine states in which the . . . facilities specifically identified in Plaintiff's Motion and supporting evidence are located"); *Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1175–76 (D.N.M. 2021) (declining to conditionally certify a nationwide collective action and limiting the action to employees located in New Mexico).

Moreover, some courts have confined the conditional certification of a collective action to a single facility. *Pichler v. Cotiviti, Inc*, No. 2:23-cv-0884-AMA, 2024 WL 3089897, at *6–7 (D. Utah June 21, 2024) (limiting conditional certification to employees working in a single call center, but finding that the scope of the collective action could be expanded if the plaintiff uncovered evidence of a similar policy in other call centers); *Braun v. Superior Indus. Int'l, Inc.*, No. 09-2560-JWL, 2010 WL 3879498, at *5–6 (D. Kan. Sept. 28, 2010) (limiting conditional certification to one of five facilities operated by the defendant where the facility was the only one located within the state of Kansas).

The plaintiffs in this case argue that the court should conditionally certify a nationwide collective action. But the plaintiffs have not presented a sufficiently large or diverse sample of employee declarations to support the inference that Security National tolerates an informal companywide policy of requiring its loan employees to work overtime hours without compensation. The *Landry* court conditionally certified a nationwide collective action based on declarations covering multiple locations within five states. 252 F. Supp. 3d at 1125–26. The *Deakin* court similarly certified a nationwide collective action based on six employee declarations

covering five states. 328 F.R.D. at 434–35; *but see Bowling*, 2023 WL 4364140, at *6–*7 (denying conditional certification of a nationwide collective action where the plaintiff presented evidence from seven employees covering nine different states and confining the action to those nine states). Here, the plaintiffs seek conditional certification of collective action covering all 22 states where Security National operates based on evidence concerning locations within two states—less than ten percent of the total number of states for which the plaintiffs seek certification. Thus, the court finds that the declarations submitted by the plaintiffs do not justify a nationwide collective action.

But the court also rejects Security National's proposal to limit the collective action to the Scottsdale and Murray branches. In *Madsen*, 2024 WL 1160204, at *3, this court concluded that declarations submitted by an employee in Utah and an employee in Oregon were sufficient to justify a collective action covering those states rather than specific locations within those states. Other courts have adopted this statewide approach to limit the geographic scope of a collective action. *Bowling*, 2023 WL 4364140, at *7; *Guarriello*, 517 F. Supp. 3d at 1175–76. Similarly, the declarations submitted by the plaintiffs in this case, which include allegations that multiple employees located within Utah and Arizona were effectively required to work overtime without pay, adequately support an inference of a common policy or plan covering these two states.

B. *Scope of Job Titles Included Within the Collective Action*

The parties also dispute the job titles to be included within the conditionally certified collective action. Security National contends that the collective action should be confined to the job positions that the plaintiffs held—i.e., loan processor, loan assistant, and loan closer. The plaintiffs propose that the court should not limit the action to specific job titles, but instead conditionally certify an action covering a loosely-defined category of "Loan Employees."

The court declines to adopt the open-ended term "Loan Employees" to define the class. The appropriate scope of the conditionally certified class must be established through the allegations of the complaint and any declarations submitted in support of the certification motion. Neither the complaint nor the plaintiffs' declarations define or support the use of a broad category of loan employees. The court also rejects Security National's proposal to limit the collective action to the job positions that the plaintiffs held. The complaint and the declarations indicate that hourly employees in an additional position also worked overtime without compensation.

Thus, taking into account the allegations of the complaint and the assertions found in the declarations, the court concludes that employees with the following job titles should be included in the preliminarily certified collective action: loan officer assistant, loan processor, loan closer, and loan funder.

### III.   FORM OF THE NOTICE PACKET

The plaintiffs ask the court to approve the form of a proposed notice packet to be sent to potential participants in the collective action. They further ask the court to order Security National to provide contact information for potential collective action members within ten days of the entry of this order. At oral argument, Security National presented three objections to the plaintiffs' proposed notification plan.

First, Security National requests 21 days to provide the contact information rather than ten days in order to allow sufficient time to collect the information. The court finds this request to be reasonable. Security National shall have 21 days to provide the information to the plaintiffs.

Second, Security National objects to the inclusion of the following language in the proposed notice describing the claims made by the plaintiffs in this action:

> Specifically, Plaintiffs allege that despite regularly working overtime hours each week, Security National discouraged and/or prohibited Loan Employees from recording all such hours worked. In those limited instances in which Security National permitted the recording of some overtime hours worked, Security National failed to factor the value of earned bonuses/commissions in employees' overtime rates of pay, as well as all overtime hours actually worked, such that it under paid [sic] Loan Employees the overtime wages due.

The court sustains this objection in part. It is appropriate to describe in broad terms the plaintiffs' allegations in this action. But the second sentence of the above-quoted language presents the plaintiffs' allegations as established facts. The court ORDERS the plaintiffs to replace this sentence with the following language: "Plaintiffs further allege that when Loan Employees recorded overtime hours worked, Security National failed to factor the value of earned bonuses or commissions in the employees' overtime rates of pay, as well as all overtime hours actually worked, such that Security National underpaid Loan Employees the overtime wages due."

Third, Security National objects to the open-ended definition of the term "Loan Employees" used in the proposed notice document. For the same reasons discussed above in Part II.B, the court sustains the objection. In order to conform the notice document with the scope of the conditionally certified collective action, the court ORDERS the plaintiffs to replace the language found in the "TO:" line on the first page of the document with the following language: "All non-exempt Loan Officer Assistants, Loan Processors, Loan Closers, and Loan Funders (collectively, "Loan Employees"), employed by Security National in Arizona or Utah at any time on or after May 14, 2021."

With the above edits, the court approves the notice packet submitted to the court.

## CONCLUSION AND ORDER

For the reasons discussed above, the court rules as follows:

1) The court GRANTS IN PART the plaintiffs' motion for conditional certification of a collective action. The court defines the scope of the conditionally certified collective action as follows: all non-exempt loan officer assistants, loan processors, loan closers, and loan funders employed by Security National in Arizona or Utah at any time on or after May 14, 2021.

2) The court ORDERS the plaintiffs to amend the notice packet as described above in Part III of this order. With these edits, the notice packet is approved as to form.

3) The court ORDERS Security National to provide to the plaintiffs in an electronic and importable format a list of the names, last known addresses, dates and location of employment, last known personal cell phone numbers, and last known personal and work email addresses of employees that fall within the collective action definition set forth above. Security National must provide this information within 21 days of this order.

4) The plaintiffs are authorized to send the amended notice packet to individuals falling within the collective action definition via regular mail (with an enclosed, postage-paid return envelope), email, and text. The plaintiffs may also send one reminder notice packet via U.S. Mail (with an enclosed, postage-paid return envelope), email, and text message, sent 30 days after the initial notice packet is sent.

DATED March 5, 2026.

BY THE COURT

Jill N. Parrish
United States District Court Judge